

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-8-1997

# United States v. McKie

Precedential or Non-Precedential:

Docket 96-7010,96-7011,96-7014

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"United States v. McKie" (1997). *1997 Decisions.* Paper 98.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/98

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 8, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 96-7010, 96-7011
and 96-7014

UNITED STATES OF AMERICA;
GOVERNMENT OF THE VIRGIN ISLANDS

v.

MICHAEL McKIE,
Appellant at No. 96-7010

JERMAINE HALL,
Appellant at No. 96-7011

GUY M. HENRY,
Appellant at No. 96-7014

On Appeal from the District Court of the Virgin Islands
Division of St. Croix
(D.C. Criminal Nos. 95-cr-00036-1,
95-cr-00036-2 and 95-cr-00036-3)

Argued December 9, 1996

Before: SCIRICA, NYGAARD and McKEE, Circuit Judges

(Filed May 8, 1997)

MICHAEL A. JOSEPH, ESQUIRE
 (ARGUED)
52A Company Street, Suite 1
Christiansted, St. Croix
U.S. Virgin Islands 00820

Attorney for Appellant,
Michael McKie

MARTIAL A. WEBSTER, ESQUIRE
P.O. Box 1568, Suite 10
298 Peter's Rest
Kingshill, St. Croix
U.S. Virgin Islands 00851

Attorney for Appellant,
Jermaine Hall

JEFFREY B.C. MOORHEAD,
 ESQUIRE (ARGUED)
1132 King Street, 2nd Floor
Christiansted, St. Croix
U.S. Virgin Islands 00820

 Attorney for Appellant, Guy Henry

DENISE HINDS-ROCH, ESQUIRE
 (ARGUED)
JAMES R. FITZNER, ESQUIRE
Office of United States Attorney
1108 King Street, Suite 201
Christiansted, St. Croix
U.S. Virgin Islands 00820

 Attorneys for Appellees

**OPINION OF THE COURT**

SCIRICA, <u>Circuit Judge</u>.

In this joint appeal, defendants Michael McKie, Guy
Henry and Jermaine Hall challenge their convictions on
weapons offenses. We will reverse defendants' convictions

2

for unlawful firearm possession under Virgin Islands law, but we will affirm all other issues raised in this appeal.

I.

On April 14, 1995, at 12:30 a.m. in St. Croix, defendants' car was stopped for a traffic violation. Four police officers ordered the driver, McKie, out of the car. The passengers, Hall, Henry and a juvenile, were also ordered to leave the car after an officer observed them conversing and looking around inside the car. At that point, an officer spotted a .38 caliber revolver on the back seat of the car. Further inspection revealed two more firearms -- a Tec-9 machine gun[1] on the front passenger sidefloorboard, and a .45 caliber pistol on the rear driver's side floorboard.[2]

At trial, Hall testified that he and the other defendants flew to St. Croix from St. Thomas on a chartered airplane. They arrived at 11 a.m. to attend a reggae concert later that evening. Although unemployed, Hall brought with him $700 in cash that he had accumulated by gambling and cock fighting. Upon arrival, they were met by a friend whose car they borrowed.

Hall testified that after arriving in St. Croix, he received a death threat from someone who previously had shot him. He did not report this to the police but instead decided to obtain a firearm. By chance, he ran into an acquaintance who sold him three firearms for $500. Hall testified he

_____

1. The Tec-9 pistol is considered a machine gun under Virgin Islands law because, even though it cannot fire in fully automatic mode, it has the capacity to fire more than 12 shots without reloading. See V.I. Code Ann. tit. 14, § 2253(d)(2). Under federal law, this weapon is not classified as a machine gun but as a semiautomatic assault weapon. See 18 U.S.C. § 921(a)(30)(a)(viii).

2. The .38 caliber revolver was positioned between Hall and the juvenile, "on top of the back seat . . . a long bench seat . . . right in the middle of the seat, just sitting there." The Tec-9 machine gun was located on the front passenger side floorboard, "right on the floor, right where your feet would be." The .45 caliber pistol was located on the rear driver's side floorboard where the juvenile had been sitting. At trial, a firearms expert testified that each of the three firearms was loaded with ammunition and ready to fire.

concealed the three weapons in the car without telling McKie and Henry about his purchase.

According to Hall, defendants left in the car to attend the concert around 10:30 p.m. McKie was driving. Hall initially sat in the front passenger seat and Henry in the back, but they switched positions when Henry complained about being cramped in the back of the subcompact car (an Isuzu I-Mark). As noted, defendants were stopped by the police around 12:30 a.m.

All three defendants were convicted under Count I of the indictment for possession of a firearm with an obliterated serial number in violation of federal law (18 U.S.C. §§ 922(k) and 2) and under Counts II and III for possession of firearms in violation of Virgin Islands law (V.I. Code Ann. tit. 14, §§ 2253(a), (b) and 11). McKie was also convicted under Count IV for possession of a firearm by a felon in violation of federal law (18 U.S.C. § 922(g)(1)). McKie was sentenced to 60 months imprisonment on Count I, 5 years each on Counts II and III, and 72 months on Count IV, all to run concurrently. Hall was sentenced to 36 months on Count I and 30 months each for Counts II and III, with the territorial sentences to run concurrently but consecutive to the federal sentence. Henry was sentenced to 37 months on Count I and 3 years each on Counts II and III, all to run concurrently.

As we have noted, all defendants appeal their firearm convictions under Virgin Islands law. Hall also appeals the district court's denial of his motion to compel performance of a plea agreement. Defendants do not appeal their federal firearm convictions.

II.

Before trial, the government offered a plea agreement to Hall. In exchange for his guilty plea, truthful testimony at trial and "complete debriefing" regarding the guns, the government would recommend a reduction in his offense level. But during debriefing, the government questioned Hall's credibility and withdrew the plea offer. Hall now claims the district court erred in denying his motion to compel performance of the plea agreement. We review for

4

abuse of discretion. See United States v. Trott, 779 F.2d 912, 915-16 (3d Cir. 1985); Government of Virgin Islands v. Berry, 631 F.2d 214, 219-20 (3d Cir. 1980).

Hall contends the government breached the plea agreement by withdrawing the plea offer. But the plea agreement recites, "The defendant [Hall] recognizes that, in the event it is determined he has made any materially false statements pursuant to this agreement, the agreement will be voided." Hall also argues he did not get the benefit of his bargain with the government. But neither did the government. Hall neither pled guilty nor testified for the government at trial. In the plea agreement, the government retained discretion to withdraw its offer. The district court did not abuse its discretion.[3]

III.

Defendants challenge their convictions for possession of firearms in violation of V.I. Code Ann. tit. 14,§§ 2253(a) and (b).[4] The statute provides in part:

_____

3. Although Hall was invited by the court to move for an evidentiary hearing on this matter at the end of trial, he failed to do so. Whether or not this constitutes waiver, see Baker v. United States, 781 F.2d 85, 90 (6th Cir.), cert. denied, 479 U.S. 1017 (1986), the district court properly denied his motion.

4. As noted, defendants do not appeal their federal firearm convictions for violations of 18 U.S.C. §§ 922 and 2. Because McKie and Henry are serving their unchallenged federal sentences concurrently with their territorial sentences, the concurrent sentence doctrine may apply. Under the concurrent sentence doctrine, we have discretion to avoid resolution of legal issues affecting less than all of the counts in an indictment where at least one count will survive and the sentences on all counts are concurrent. See United States v. American Investors of Pittsburgh, Inc., 879 F.2d 1087, 1100 (3d Cir.), cert. denied, 493 U.S. 955 (1989). The concurrent sentence doctrine may not be invoked where a defendant may suffer collateral consequences from the multiple convictions. It is rarely invoked in federal court now because of the mandatory $50.00 assessment imposed on each federal count resulting in conviction. See Ray v. United States, 481 U.S. 736, 737 (1987) (holding concurrent sentence doctrine does not apply where a monetary assessment is imposed on each count because of the collateral consequences of the multiple convictions, i.e. a defendant's "liability to pay th[e] total depends on the validity of each of his . . . convictions.").

5

(a) Whoever, **unless otherwise authorized by law**, has, possesses, bears, transports or carries either openly or concealed on or about his person, or under his control in any vehicle of any description any firearm . . . may be arrested without a warrant, and shall be sentenced to imprisonment . . . .

(b) Whoever, **unless otherwise authorized by law**, has, possesses, bears, transports or carries either openly or concealed on or about his person, or under his control in any vehicle of any description any machine gun . . . may be arrested without a warrant, and shall be sentenced to imprisonment . . . .

V.I. Code Ann. tit. 14, § 2253 (emphasis added). McKie contends the weapons were not under his control. In addition, all three defendants contend the government failed to meet its burden to prove their possession was not "authorized by law."

A.

"A weapon is under one's control, within the meaning of § 2253, if it is in an area from which [one] might gain immediate possession." United States v. Xavier, 2 F.3d 1281, 1289 (3d Cir. 1993). We believe there was sufficient evidence to sustain a verdict that the weapons in the vehicle were under McKie's control. Each of the three firearms was in plain view inside the car. The car was described as a subcompact, and Hall testified that two of the occupants changed places because of cramped seating. At trial, one of the officers testified that all the weapons were "in the open." Photographs of the guns' locations were displayed to the jury. Based on this evidence we believe the jury could have reasonably inferred that McKie knew of and had immediate access to the guns. See New York v. Belton, 453 U.S. 454, 460 (1981) ("[A]rticles inside the relatively

_____

But Hall's sentences on his territorial and federal convictions are not concurrent. Because it will be necessary to decide the validity of Hall's Virgin Islands conviction, we will not address whether the concurrent sentence doctrine applies to the other defendants.

6

narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within `the area into which an arrestee might reach in order to grab a weapon . . . .' ") (quoting Chimel v. California, 395 U.S. 752, 763 (1969)). The weapons were therefore under McKie's control within the meaning of § 2253.

B.

It is the government's burden under V.I. Code Ann. tit. 14, § 2253 to prove defendants were unauthorized to carry or possess the guns. See Xavier, 2 F.3d at 1289. The district court held the government would satisfy this burden by proving, among other things, that defendants did not have a firearms license. But defendants contend that, under V.I. Code Ann. tit. 23, § 470 (1968) (amended Sept. 1996), unlicensed firearm possession is not unauthorized by law until it lasts beyond a twenty-four hour period. Defendants maintain the government bears the burden to prove possession beyond twenty-four hours. The government disagrees, contending § 470 provides defendants an affirmative defense to a charged violation of V.I. Code Ann. tit. 14, § 2253, and falls within defendants' burden of production. See Patterson v. New York, 432 U.S. 197, 210 (1977) (holding the government need not prove beyond a reasonable doubt the nonexistence of all affirmative defenses); Government of Virgin Islands v. Smith, 949 F.2d 677, 686 (3d Cir. 1991) (defendant bears burden of production on affirmative defenses).

1.

At the time of the arrest, V.I. Code Ann. tit. 23,§ 470 (1968), allowed gun owners twenty-four hours to register their firearms:

(a) Any person . . . who purchases or otherwise obtains any firearms or ammunition from any source within or outside of the Virgin Islands shall report such fact in writing or in person to the Commissioner within 24 hours after receipt of the firearm or ammunition . . . .

7

(c) . . . If the person is not qualified for a license then the Commissioner shall retain the firearms or ammunition . . . , but no prosecution shall lie against the person for unlawful possession of the firearm or ammunition.5

The twenty-four hour grace period was removed from § 470 in September 1996. Under the current statute, a person must obtain a license "immediately" upon possession of a firearm. V.I. Code Ann. tit. 23, § 470 (Sept. 1996).

Defendants argue it was the government's burden to prove their firearm possession lasted beyond twenty-four hours. It is always the government's burden to prove

_____

5. The complete text of § 470 (1968) provided:

(a) Any person other than a licensed dealer, who purchases or otherwise obtains any firearms or ammunition from any source within or outside of the Virgin Islands shall report such fact in writing or in person to the Commissioner within 24 hours after receipt of the firearm or ammunition, furnishing a complete description of the firearm or ammunition purchased or otherwise obtained. He shall also furnish his own name, address, date of birth and occupation.

(b) Any person upon entering the Virgin Islands bringing with him any firearm or ammunition shall report in writing or in person to the Commissioner within 24 hours of his arrival, furnishing a complete description of the firearm or ammunition brought into the Virgin Islands. He shall also furnish his own name, address, date of birth and occupation.

(c) In the event the person reporting under subsections (a) or (b), above, is qualified for a license to carry firearms in the Virgin Islands, the Commissioner shall issue the same, upon payment of the proper fee, and the firearm shall be registered in the Weapons Register provided for in section 469 of this chapter. If the person is not qualified for a license then the Commissioner shall retain the firearms or ammunition for disposition in accordance with the provisions of section 475 of this chapter, but no prosecution shall lie against the person for unlawful possession of the firearm or ammunition.

(d) Any person who fails to comply with this section shall be punished as provided in section 484 of this chapter [the General Penalty section].

"beyond a reasonable doubt . . . every fact necessary to constitute the crime with which [a defendant] is charged." In re Winship, 397 U.S. 358, 364 (1970). The issue, then, is whether possession for more than twenty-four hours is a fact necessary to constitute the crime of unlawful possession in violation of § 2253. Our review of statutory construction is plenary. See Christopher v. Davis Beach Co., 15 F.3d 38, 41 (3d Cir. 1994).

We must first look to the language of V.I. Code Ann. tit. 14, § 2253. See United States v. Schneider, 14 F.3d 876, 879 (3d Cir. 1994). The statute punishes anyone who, "unless otherwise authorized by law, has, possesses, bears, transports or carries either openly or concealed on or about his person, or under his control in any vehicle of any description any firearm." Section 2253 does not mention duration of possession nor does it reference the twenty-four hour grace period in § 470. In the past we have interpreted the clause "unless otherwise authorized by law" to mean possession without a license. See Government of Virgin Islands v. Soto, 718 F.2d 72, 80 (3d Cir. 1983) ("[T]he gravamen of [§ 2253] appears to have been the possession of unlicensed firearms . . . ."); Government of Virgin Islands v. Bedford, 671 F.2d 758, 763 n.7 (3d Cir. 1982) (approving a jury instruction that § 2253(a) is violated if, "the defendant possessed the firearm; . . . he was not licensed to possess it; and . . . it meets the definition .. . of a firearm."). The government must prove the absence of a firearms license. But we have never designated proof of possession for more than twenty-four hours as an element of the crime.

Nonetheless, we will examine whether possession for less than twenty-four hours is a proper affirmative defense under the Supreme Court standard. At issue is whether the government is required to prove enough under § 2253, without proof of duration, "to make it just for the defendant to be required to repel" the charges with an affirmative defense. Patterson, 432 U.S. at 203 n.9 (quoting Morrison v. California, 291 U.S. 82, 88-89 (1934)). We must balance the parties' "opportunities for knowledge" and determine whether "the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression." Id.

9

A balancing of the "opportunities for knowledge" reveals it is far easier for the defendant to know of, and assert, firearm possession under twenty-four hours than it is for the government to establish possession for more than twenty-four hours. Except when a firearm is purchased lawfully from a vendor who keeps records and the purchase and buyer are capable of being traced, we believe that when a firearm was obtained is almost always exclusively within the knowledge of the defendant. See United States v. Gainey, 380 U.S. 63, 63 (1965) (The "practical impossibility" of proving a statutory violation resulted in presumption against defendants charged with violating the statute.)

In addition, the defendants' argument would require the government to prove in each prosecution that none of the statutory exceptions to the firearm license requirement are satisfied.6 Such an interpretation would conflict with our obligation to construe statutes sensibly and avoid constructions which yield absurd or unjust results. See United States v. Turkette, 452 U.S. 576, 580 (1981); Government of Virgin Islands v. Berry, 604 F.2d 221, 225 (3d Cir. 1979).

After the government proves unlicensed firearm possession, we do not find it a hardship for the defendant to come forward with evidence of the duration of possession.7 Therefore, we hold § 470 is not an element of the offense of unlawful firearm possession under V.I. Code Ann. tit. 14, § 2253, but rather is an affirmative defense.

_____

6. For example, the government would have to prove the defendants are not members of any of the armed forces of the United States, see V.I. Code Ann. tit. 23, § 453(a)(1), that defendants are not officers or employees of a federal agency authorized by law to carry firearms, see V.I. Code Ann. tit. 23, § 453(a)(2), that defendants are not jail wardens, see V.I. Code Ann. tit. 23, § 453(a)(5), and that defendants do not have licenses to carry firearms in any of the United States, see V.I. Code Ann. tit. 23, § 460.

7. It is consistent with Virgin Islands statutory law to draw an inference against a defendant from his unlicensed firearm possession. See, e.g., V.I. Code Ann. tit. 14, § 2253(c) (Defendant's unlicensed firearm possession "shall be evidence of his intention to commit [a] crime of violence.").

10

2.

But this is not the end of the inquiry. Defendants also contend they are entitled to acquittal because they presented uncontradicted evidence they purchased the guns less than twenty-four hours before their arrest. The district court instructed the jury that it may nonetheless convict defendants unless they intended to obtain afirearm license within twenty-four hours and were prevented from doing so by their arrests. Defendants challenge the court's instruction on intent, contending they may not be convicted as a matter of law if their possession did not extend beyond twenty-four hours.

The district court relied on Government of Virgin Islands v. King, No. CRIM. 529/1994, 1995 WL 217613 (Terr. Ct. V.I. March 3, 1995), which held the twenty-four hour grace period protects only those persons who intend to register and lawfully own their firearms, stating "[s]ection 470 is not a refuge for all who desire to possess a gun for less than a day." Id., 1995 WL 217613, at *5. The government urges us to follow King, arguing the stated purpose of § 470 is to proscribe possession of unlicensed firearms. See V.I. Code Ann. tit. 23, ch. 5 (1968) (Annotations) ("This chapter [including § 470] provides for penalizing constructive possession of an unlicensed firearm . . . .") The history of Virgin Islands statutory law reveals a consistent increase in the penalty for unlawful gun possession,8 and a consistent decrease in the time allowed for firearm registration.9 The government argues that interpreting § 470 to immunize anyone arrested within twenty-four hours of a purchase is directly contrary to § 470's legislative intent.

---

8. In 1957, carrying a concealed firearm without a license resulted in imprisonment for up to one year. V.I. Code Ann. tit. 14, § 2252 (1957). The current penalty for simple firearm possession is a maximum of three years and a minimum of six months incarceration. V.I. Code Ann. tit. 14, § 2253(a).

9. In 1953, firearm owners were required to register their firearms within forty-eight hours. Ord. Mun. C. St. T. and St. J. app. Dec. 18, 1953, Bill no. 291. In 1968, the period was decreased to twenty-four hours. V.I. Code Ann. tit. 23, § 470 (1968). In September 1996, the statute was amended again, requiring "immediate" registration. V.I. Code Ann. tit. 23, § 470 (Sept. 1996).

11

The government maintains the Virgin Islands legislature did not intend § 470 to provide a refuge for gun owners who never intended to register their firearms. But the language of § 470 does not include a requirement of "intent to register" for a firearm license. It simply requires registration "within 24 hours." Other than King, the government cites no authority for its interpretation. We have examined similar statutes from other states, but we have been unable to find any court which creates an intent requirement under similar circumstances. We must interpret criminal statutes strictly, "and any ambiguity must be resolved in favor of lenity" towards the defendants. United States v. Enmons, 410 U.S. 396, 411 (1973); United States v. Long, 654 F.2d 911, 914 (3d Cir. 1981).

The language of the statute (now repealed) was clear and unambiguous. It required only that "[a]ny person . . . who purchases or otherwise obtains any firearm . . .[to] report such fact . . . within 24 hours after receipt of thefirearm . . . ." V.I. Code Ann. tit. 23, § 470 (1968). If the legislature meant to include "intent to report" as part of the defense, it did not say so. See Government of Virgin Islands v. Smalls, No. CRIM. F12/1994, 1995 WL 457975 (Terr. Ct. V.I. July 27, 1995) ("[W]hether a defendant intended to report the firearm or not does not vitiate the legal authority to possess the firearm for twenty four hours before reporting it. There is no element of `intent to report' under the statute."). For this reason, we believe, the Virgin Islands legislature eliminated the twenty-four hour grace period in September 1996. Section 470 now requires registration "immediately" upon possession of a firearm.

The extensive legislative history reveals the reasons for the amendment. Concerned with the conflict between the territorial court decisions in King and Smalls, the legislature wanted to close the loophole created by the twenty-four hour grace period. As stated by one Virgin Islands senator, "[W]ith a loophole as big as the one that is currently on the books that allow[s] for a 24 hour reporting period you can clearly see that anyone at any time can easily utilize that loophole as a means of getting out of their basic responsibility and their whole possession of afirearm whether acquired legally or illegally." Hearing on Bill No. 21-

12

0219, to amend Title 23, Section 470 of the Virgin Islands Code, Reg. Sess. (V.I. Aug. 29, 1996) (statement of Senator Osbert Potter). Another senator stated, "This bill involves closing some loopholes that essentially provide for a field day for a criminal element in the area of firearm possession." Id. (statement of Senator Almando Liburd). And yet another said, "There are too many guns in this community. And if we don't start by closing these loopholes we never will." Id. (statement of Senator Lorraine L. Berry). "We believe "intent to report" was not an element of the affirmative defense of firearm possession for less than twenty-four hours, as it existed under § 470 before its recent amendment. Because the defendants presented uncontradicted evidence of possession for less than twenty-four hours,10 we find theirfirearm possession was not unauthorized by Virgin Islands law. Therefore we must reverse defendants' convictions under V.I. Code Ann. tit. 14, §§ 2253(a), (b) and 11 (aiding and abetting).

IV.

We will reverse the convictions of all defendants under V.I. Code Ann. tit. 14, §§ 2253(a), (b) and 11 (Counts II and III of the indictment). We will remand for resentencing on

_____

10. The district court implied in its jury instructions that the duration of firearm possession was under twenty-four hours:

Now, Virgin Islands firearms licensing law allows someone who obtains a firearm in the territory a grace period of 24 hours after receiving the firearm to report that fact to the Commissioner of Police for the purpose of obtaining a license for the firearm. . . .

You've heard the testimony of defendant, Jermaine Hall, that he bought these three firearms . . . in the early evening of the night the car was stopped and he was arrested for these charges.

If, after you examine the evidence, you find that Mr. Hall possessed these firearms . . . and did not have a license to possess these firearms, you should then consider his testimony in determining whether he intended to report his purchase, and whether his arrest prevented him from so reporting his purchase of the guns to the police within 24 hours.

(Appellants' Br. at 222a - 223a.)

13

the remaining convictions under 18 U.S.C. §§ 922 and 2.11
See United States v. Levy, 865 F.2d 551, 559 n.5 (3d Cir.
1989) ("[W]here the sentences imposed on two of the three
counts are vacated and all three sentences arise from the
same criminal transaction, it is appropriate to vacate the
third, valid sentence in order to afford the trial judge an
opportunity to properly exercise his sentencing discretion
. . . .") (citations omitted).

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

_____

11. As we have noted, all defendants were convicted of violating 18
U.S.C. § 922(k) and 2, which prohibit possession (and aiding and
abetting possession) of a firearm with an obliterated serial number.
McKie was also convicted of violating 18 U.S.C.§ 922(g)(1), which
prohibits possession of a firearm by a felon. Defendants did not appeal
their convictions for the § 922 violations.

14