**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**JAMIL ISAAC and RAHEEM TAYLOR, Defendants**

Criminal No. 46/2002, 47/2002

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

February 2, 2004

AUGUSTIN AYALA, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for the Government of the Virgin Islands*

LEONARD BERNARD FRANCIS, JR., ESQ., St. Thomas, USVI, *Attorney for Defendant Jamil Isaac*

JOSEPH J. MINGOLLA, ESQ., St. Thomas, USVI, *Attorney for Defendant Raheem Taylor*

HODGE, *Judge*

## MEMORANDUM OPINION

(February 2, 2004)

Before the Court are Defendants Jamil Isaac ("Isaac") and Raheem Taylor's ("Taylor") (collectively, "Defendants") Motions for Judgment of Acquittal. Both Defendants were convicted in a jury trial of possession of an unlawful firearm, and Taylor was convicted of other traffic charges not relevant here. For the reasons stated more fully herein, Defendants' motions shall be denied.

## FACTS

On January 25, 2002, Taylor and Isaac were traveling together in a car belonging to Ikim Blackett ("Blackett"), who was not charged in this case. Taylor and Isaac, who are both mechanics, had been working throughout the day on Blackett's Volkswagon. Blackett had dropped it off with them early that morning. On the evening of that day, Taylor and Isaac had gone to the University of the Virgin Islands to pick up Taylor's sister, Tamela[1], a student at the university. Taylor was driving, Isaac was in the passenger seat, and Taylor's sister was in the back seat. While driving back to the Bovoni area, they were pulled over by Officer Jorge Gonzalez ("Gonzalez") because they did not have a visible license plate for the car. At trial, Gonzalez testified that after stopping Taylor, all three occupants of the vehicle produced identification, Taylor produced evidence of insurance on the car, and Taylor also told Gonzalez that he did not have a driver's license. Gonzalez stated that for purposes of his own safety, he shined a flashlight into the car, at which point he saw a gun protruding from underneath the driver's seat. Gonzalez asked all three occupants to step out of the car. When he questioned the three about the gun, no one claimed ownership of it.

Gonzalez testified further that when he went to call for back-up, he heard a shot and then heard his partner, Detective Aaron Krigger, yell

---

[1] Tamela Taylor was charged with possession of a firearm but those charges were dismissed just prior to trial on the Government's motion.

"freeze." Conflicting testimony was presented about whether a red Honda had driven up to the scene at that moment. He stated that at that time, Taylor and Isaac were behind him and when he turned around, he saw Isaac running into the bushes near the edge of the road. He also testified that when Isaac leaped into the bushes he appeared to have something in his hand. Gonzalez said he ordered Isaac out of the bushes, and that when Isaac emerged he was bleeding. Isaac was transported to the hospital by ambulance. Sergeant Elton Grant, supervisor of the K-9 unit for the Virgin Islands Police Department, stated at trial that when he arrived at the scene, he conducted a search of the bushes with his dog, and that the dog recovered a holster.

On December 2, 2003, the jury found both Taylor and Isaac guilty of unauthorized possession of a firearm in violation of V.I. CODE ANN. tit. 14 § 2253(a) (1996 & Supp. 2003) and of aiding and abetting each other in the commission of that crime in violation of 14 V.I.C. § 11(a). Isaac subsequently filed a timely motion for judgment of acquittal, in which Taylor joined.

## DISCUSSION

Following their convictions, Taylor and Isaac now bring motions for judgments of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.[2] A motion for judgment of acquittal must be granted where the Court determines as a matter of law that no reasonable jury could find the defendant guilty beyond a reasonable doubt. *Walters v. Government of the Virgin Islands*, 172 F.R.D. 165, 171 (D.V.I. 1997), *aff'd* 135 F.3d 764 (3d Cir. 1997). In making a determination, the Court must decide whether substantial evidence existed at trial upon which a reasonable jury could have reached a verdict of guilty. *United States v. Fredericks*, 38 F. Supp. 2d 396, 398 (D.V.I. 1999). All the evidence and reasonable inferences therefrom must be viewed in the light most favorable to the government. *Id.* The Court may not assess the credibility

---

[2] Rule 29 provides, in pertinent part, that "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later, or within any other time the court sets during the 7-day period," FED. R. CIV. P. 29(c)(1) and, further, that "if the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." FED. R. CIV. P. 29(c)(2).

of the individual government witnesses in reaching its decision. *Virgin Islands v. Albert*, 18 V.I. 21, 23 (D.V.I. 1980).

Defendants argue that substantial evidence was not presented on the unauthorized possession and the aiding and abetting charges because the Government failed to prove (1) that the defendants were not "otherwise authorized" to carry a firearm, and (2) that the defendants had constructive possession of the weapon.

## 1. "Otherwise Authorized"

The statute under which Taylor and Isaac were charged with unauthorized possession of a firearm contains language precluding prosecution under its aegis where an individual is authorized to possess a firearm: "Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries, either actually or constructively, openly or concealed, any firearm, as defined in Title 23, section 451(d) of this code, loaded or unloaded, may be arrested without a warrant …[.]" 14 V.I.C. § 2253(a). At trial, the parties stipulated to the fact that neither Taylor nor Isaac had a license for the gun that was found in the car. Defendants now contend that this stipulation extended only to their not having a license for the firearm that was found, and that the Government still had the burden of proving the defendants were not "otherwise authorized" to have a firearm under Virgin Islands law under any of the exceptions provided by statute.[3] Defendants' assertion that the stipulation at trial was insufficient to cover the authorization element of 14 V.I.C. § 2253 is incorrect. However, the argument Defendants invoke points out the present indeterminate state of the law regarding the "otherwise authorized" element. For clarification purposes, the Court will therefore address the issue.

In support of their position, Defendants cite *Toussaint v. Gov't. of the Virgin Islands*, 964 F. Supp. 193 (D.V.I. App. Div. 1997). *Toussaint* was decided on May 7, 1997. The Court held:

---

[3] Exceptions encompassed in the "otherwise authorized by law" clause are located in Title 23, Chapter 5 of the Virgin Islands Code. They include a list of persons who may lawfully carry firearms (23 V.I.C. § 453), persons who may be licensed to carry firearms (23 V.I.C. § 455), and persons who have a reciprocal right to carry a firearm based on licensure outside the territory (23 V.I.C. § 460).

[I]t should be obvious, however, that a violation of section 2253(a) requires more than mere proof that the defendant had no license to possess the gun....In sum, the Government must prove that a defendant charged with violating section 2253(a) was not 'otherwise authorized by law' to possess the firearm. This includes proof that the defendant had no license under 23 V.I.C. § 454, that the defendant was not one of those persons described by 23 V.I.C. § 453 as being authorized to possess the gun, and that the defendant had no reciprocal right to possess the firearm under 23 V.I.C. § 460 (second paragraph). *Id.* at 197-98.

One day after *Toussaint* was decided, the Third Circuit Court of Appeals decided *United States v. McKie*, 112 F.3d 626 (3d Cir. 1997) (decided May 8, 1997). In that case, all three defendants argued that the Government failed to meet its burden to prove they were not "otherwise authorized by law" to possess the firearm in question. The Court stated:

In the past we have interpreted the clause "unless otherwise authorized by law" to mean possession without a license. *See Government of Virgin Islands v. Soto*, 718 F.2d 72, 80 (3d Cir. 1983) ("[T]he gravamen of [2253] appears to have been the possession of unlicensed firearms ..."). *McKie* at 630.

The Court then added;

[I]n addition, the defendant's argument would require the government to prove in each prosecution that none of the statutory exceptions to the firearm license requirement are satisfied. Such an interpretation would conflict with our obligation to construe statutes sensibly and avoid constructions which yield absurd or unjust results. *Id.* at 631.

One year and a half after the *McKie* decision, the District Court Appellate Division issued its decision in *Francis v. Government of the Virgin Islands*, 31 F. Supp. 2d 499 (D.V.I. App. Div. 1998), noting in footnote 6 the disjunction between *Toussaint* and *McKie*. Summarizing the *Toussaint* decision, the *Francis* court said its "direct holding conflicts with the Court of appeals' *obiter dicta* to the contrary that, in essence, "unlawful" in § 2253(a) means "unlicensed" in *U.S. v. McKie*. This

conflict is presently before the *Toussaint* panel for reconciliation." *Francis* at 500 n. 6.

Defendants raise a valid point that both *Toussaint* and *Francis* are still good law. Although Defendants did not cite to it in support of their position, the Court notes that the line of reasoning reflected in those two cases extends back even prior to the *Toussaint* holding. In *Government of the Virgin Islands v. Smalls*, the court held unequivocally that in a prosecution pursuant to 14 V.I.C. § 2253, the government must prove not only that the gun was unlicensed, but that no exceptions exist under the statutes falling under the umbrella of the "otherwise authorized" provision: "[T]he Government must prove in all "unauthorized possession" cases that the defendant is neither authorized by a firearm license nor by any of the other three lawful means to possess it." *Government of the Virgin Islands v. Smalls*, 32 V.I. 175, 179 (Terr. Ct. St. T. & St. J. 1995).

The Government counters that *Soto* and *McKie* have not been overruled, an argument that appears equally valid. The Court also notes the holding in *Government of the Virgin Islands v. King*, supporting the same position, and, indeed, extending it even further. *Government of the Virgin Islands v. King*, 31 V.I. 79 (Terr. Ct. St. X [*sic*] 1995) (*overruled on other grounds by McKie*). Addressing the authorization clause in the statute, the *King* Court identified it as a "proviso intended to modify the general prohibition against carrying firearms" and then held:

> Matters placed in a proviso are not elements of the offense, but matters of defense which the government need neither plead nor prove ... The legislature could not have intended to place such a near impossible burden on the government of proving the inapplicability of each exception to establish a violation ... . To require such proof would yield absurd results and unduly stifle effective enforcement of the statute. The exceptions are thus affirmative defenses. *King* at 85-87.

A recent District Court case again addressed the "otherwise authorized" issue, with an outcome similar to that advocated by the Government in this case. *United States v. McIntosh*, 289 F.Supp. 2d 672 (D.V.I. App. Div. 2003). In *McIntosh*, the Court stated that "[t]he 'unless authorized by law' element has been judicially construed to require that the government merely prove the absence of a license from the

commissioner of Police to carry or possess the gun ... ." *Id.* at 674-75. The opinion then goes on to cite to the portion of *Soto* quoted in *McKie*. *Id.* However, just as *McKie* contradicted in *dicta* what *Toussaint* held directly, the comments in *McIntosh* supporting following *McKie* rather than *Toussaint* are in a footnote, and could themselves be considered *dicta*. *McIntosh* at 675 n. 2.

In summary, then, a review of relevant case law indicates that at least six cases addressing the "otherwise authorized" portion of 14 V.I.C. § 2253 remain good law, despite containing diametrically opposed holdings.[4] Further complicating the matter is the fact that of those six, each side can claim three in support of its position. The Court is disturbed by this conflict, giving rise as it does to ambiguity regarding the burden of proof in cases brought under the statute. Absolute certainty is rarely the hallmark of the law. This does not mean, however, that ambiguity is to be embraced where a more defined rule is not only desirable, but obtainable. The Virgin Islands· legislature has made a singular effort to convey that it intends for 14 V.I.C. § 2253 to curtail the possession and use of illegal weapons in the territory. Evidence of this intent is found in the numerous amendments to the statute in recent years, including the most recent amendments imposing severe penalties for its violation.[5] Given this legislative intent, and the enormity of the penalties a defendant convicted under the statute faces, the Court concludes that such clarification is necessary here.

■ The Court therefore holds, in keeping with *McKie* and the cases citing to it, that in prosecuting a case in which the defendant has been charged pursuant to 14 V.I.C. § 2253, the Government does not have to address each and every possible exception encompassed by the "otherwise authorized" portion of the statute, proving that none could have existed. The Court adopts the Third Circuit's position that such a requirement would serve little legitimate purpose. The *McKie* court's assessment of the issue, despite being located in *dicta,* has a foundation

---

[4] Searches both computerized and traditional do not indicate that any of these cases has been overturned, except on grounds not at issue here, as is the case in *King.*

[5] A defendant who does not have a previous felony record and is convicted under this statute faces a penalty of a minimum of six months in prison and a $15,000 fine; a defendant who is convicted and does have a prior felony must be sentenced to at least 15 years in prison and fined $25,000. 14 V.I.C. § 2253(a).

in *King* and its direct holding, as well as cases dating as far back as *McKelvey v. United States,* 260 U.S. 353, 356067, 43 S. Ct. 132, 133-34, 67 L. Ed. 301 (1922) (holding that the government does not have to prove every exception established by proviso or statutory exception). The *Soto* Court determined that the crux of the statute at issue here was to punish possession of unlicensed firearms, and this Court agrees. Further support for this position can be found in cases that have dealt with exceptions to like statutes.

In *United States v. Lawrence.* 349 F.3d 109 (3d Cir. 2003), the Court held that establishing a weapon as an antique firearm in order to fall within the provided exception to the federal firearm possession statute was an affirmative defense, requiring that a defendant raise the issue with sufficient evidence to justify shifting the burden of proof to the Government. *Lawrence* at 123. The *Lawrence* Court stated:

> We agree that the government can not be expected to engage in the litigational equivalent of shadow boxing by jabbing and striking at shadowy inferences that may arise from the ethers of testimony. Yet, Lawrence's position as to the government's burden of establishing the date of manufacture of a weapon that was never recovered would lead us down that road. *Id.* at 122.

Despite the differences in the federal statute at issue in *Lawrence* and the Virgin Islands statute at issue in this case, the contours of the argument are compelling. There is no *per se* rule that just because a given statute is accompanied by a companion statute providing exceptions to the original statute's reach, the government must prove that each and every one of those exceptions did not exist. Rather, in determining the parameters of the government's burden of proof, the most important consideration is the essence of the statute's meaning. This is the principle set out in *Soto,* expanded upon in *King,* reiterated in *McKie,* relied upon in *McIntosh,* and now adopted by the Court. The *Toussaint* Court itself recognized this principle when it addressed the question of whether the Government had to prove a firearm was in a defendant's possession for more than twenty-four hours. It held that 23 V.I.C. § 470, which at the time gave persons acquiring firearms a twenty-four hour grace period in which to report the firearm, provides an

affirmative defense, and need not be proven by the Government as an element of the crime in a prosecution under 14 V.I.C. § 2253(a).[6]

■ Mindful of a defendant's right to have every element of a charged crime proven beyond a reasonable doubt, the Court nonetheless concludes that this right can be protected without making the Government resort to the pedantic exercise of proving the absence of every potential instance in which a defendant could lawfully possess a firearm. Possession of unlicensed firearms is the focal point of 14 V.I.C. § 2253, and we hold that the Government meets its burden of proof on the element of authorization when it demonstrates beyond a reasonable doubt that a given defendant did not have a license for the firearm in question. In this case, the parties stipulated to the fact that Defendants did not have a license for the gun that was found, so the Government clearly met its burden.

## 2. Constructive Possession

■ Under the current version of 14 V.I.C. § 2253, "possession" is defined as both actual and constructive possession (14 V.I.C. §2253(d)(4)) and "constructive possession" is defined as "having the power and the intention at any given time to exercise dominion or actual control over the firearm either directly or through another person." 14 V.I.C. § 2252(d)(5). Defendants argue that they did not have possession of the firearm because they had no knowledge of its existence, and therefore could not have intended to exercise control over it. However, case law is substantial indicating that where a firearm is found within the passenger compartment of a vehicle, knowledge and control can be inferred.

In a recent Supreme Court decision, the Court unanimously held that a police officer had probable cause to arrest a defendant who was in the front passenger seat of a car being driven by the car's owner and also containing a second passenger in the back seat. *Maryland v. Pringle*, 124 S. Ct. 795 (2003). After a consent search of the vehicle, officers found $763 in cash in the glove compartment in front of Pringle, and five glassine bags of cocaine behind the back seat armrest. All three men denied ownership of the money and the cocaine and all three were

---

[6] Indeed, the Court notes that in support of its holding on the 24-hour grace period, the Court in *Toussaint* cited *McKelvey*. *Toussaint* at 197 n. 9.

arrested. Pringle, the front seat passenger, was convicted of possession with intent to distribute cocaine. The Court held:

> As it is an entirely reasonable inference from the facts here that any or all of the car's occupants had knowledge of, and exercised dominion and control over, the cocaine, a reasonable officer could conclude that there was probably cause to believe Pringle committed the .crime of possession of cocaine, either solely or jointly. *Id.* at 797.

Although *Pringle* is a probable cause case, and this case involves a motion for acquittal, the basic issue is the same. The Court must decide whether an inference can reasonably be drawn, based on the facts presented at trial, that someone in the front seat of a car in which prohibited material is found has knowledge of and control over those items. The Supreme Court decided that it can, and the facts in this case are not so dissimilar as to warrant a different conclusion. Furthermore, case law in this jurisdiction arrives at the same conclusion: "A weapon is under one's control, within the meaning of § 2253, if it is in an area from which one might gain immediate possession … . Thus, if the gun is in the passenger compartment, the gun is accessible and may be under the defendant's control.["] *United States v. Xavier,* 2 F.3d 1281, 1289-90 (3d Cir. 1993).

The government's evidence at trial indicated that Isaac and Taylor had been together all day on the day the gun was found, and that they had worked together on the car throughout the day. Further evidence showed that the car had been cleaned and inspected by Blackett before it was dropped off for Taylor and Isaac to work on, and contained no gun. According to testimony, Taylor was in the driver's seat under which the gun was found, and Isaac was next to him in the front passenger seat of the Volkswagon. The evidence also showed that Isaac emerged from the car at the officer's request, and that when, shortly thereafter, he fled into the nearby bushes, he had an object in his hand. Further, the evidence indicated that a police dog searched the same spot in the bushes, and found a holster alleged to be for a firearm.

The Court agrees with the statement in *Xavier* that it is certainly possible for a driver not to have access to a gun held by a passenger. *Xavier* at 1290. Similarly, a passenger could lack access to a gun in the driver's possession. However, the Court concludes that the evidence

presented at trial was sufficient that a jury could reasonably have inferred such access on the part of either defendant in this case.

Defendants argue that proving control is insufficient to show constructive possession; the government also needed to prove "intent" to exercise control pursuant to 14 V.I.C. § 2253(d)(5), and failed to do so because it did not prove knowledge of the presence of the firearm. This argument is unpersuasive insofar as the *Pringle* holding provides that both control and knowledge can be inferred where the facts render those inferences reasonable. It was therefore not unreasonable for the jury to find constructive possession. Furthermore, a recent case from the Eastern District of Pennsylvania, in which the defendants were prosecuted under the federal statute governing illegal possession of a firearm, affirmed a conviction and determined the defendant had knowledge of the gun that was found in his car when the defendant was seen exiting the vehicle and the gun was found on the front seat. *United States v. Gonzalez*, 2003 [WL] (E.D. Pa. March 6, 2003). *See also United States v. Lopez*, 271 F.3d 472; *United States v. Figueroa*, 2000 [WL at 5] (E.D. Pa. Sep. 18, 2000) *aff'd* 281 F.3d 225 (3d Cir. 2001) (Table); *United States v. Jones*, 84 F.3d 1206, 1211 (9th Cir. 1996); *United States v. Gill*, 58 F.3d 334, 336 (7th Cir. 1995), But *see United States v. Chairez*, 33 F.3d 823, 825 (7th Cir. 1994).

The Court thus determines that the jury's conclusions in this case were reasonable ones, and Defendants' Rule 29 motions are denied. For the same reasons enumerated above, the Court also finds there was sufficient evidence for a jury reasonably to conclude that the co-defendants acted in concert and aided and abetted one another in possessing a firearm. An accompanying order shall issue.